## Ellis's Estate.

*Charities—Testamentary trusts—Perpetuities—Doctrine of cy pres—Act of April 26, 1855, and its amendments and supplements.*

[For syllabus and report, see 8 D. & C. 775.]

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1910, No. 154.

HENDERSON, J., concurring, Nov. 21, 1927.—Charities have long been favored in Pennsylvania, not because an act of charity propitiated the evil spirits surrounding the benefactor, as was early believed, but for the good of the community.

Indeed, it may be said that the breadth and depth of the policy of this Commonwealth towards charities has been due largely to the farseeing and statesmanlike provisions of the Act of 1855, its supplements and amendments. The draftsmen of those acts intended the "dead hand," from which England had greatly suffered, should rest but lightly upon this Commonwealth.

It is sought to avoid the effect of these remedial statutes by a plea for a strict construction thereof. Such a plea was refused in Kortright's Estate, 237 Pa. 143. The foundations of these acts were greatly strengthened by the liberal interpretations of our Supreme Court in Anderson's Estate, 269 Pa. 535, and Thompson's Estate, 282 Pa. 30. In these cases, under a broad interpretation of these acts, it has been held that upon the death of a trustee appointed by the testator to select the charitable objects as well as the beneficiaries, the court could appoint a trustee to do so; and in Hunter's Estate the selection of the beneficiary was made by this court without the intervention of a trustee. It is too late to contend for a narrow construction of these remedial acts.

The practice under these acts for over seventy years has been beneficial to the charities, and generally without controversy as between the Commonwealth and the charity in question.

Ellis's Estate.

When the charity is incorporated and desires to take and hold for its charitable purposes a further sum which would be beyond the limit of its charter, a petition is presented to the Court of Common Pleas, setting out the need for the further sum, and after notice to the Attorney-General, the need being a real one, a decree is entered permitting a larger sum to be held. Such a decree was recently entered in the Edwin Forrest Home, Incorporated, the petition having been presented by the distinguished counsel for these exceptants. In that case the funds were acquired from the Nirdlinger Estate. The testator gave the fund to a corporation, and before it could be accepted, it was necessary to show the use to which it would be put and to procure a decree authorizing its acquisition. In the instant case, instead of the funds being given to a corporation, the testator has bequeathed them to a corporate testamentary trustee, and for that reason alone it is argued that this trust is not under these acts. And this contention is made, notwithstanding the title of the Act of 1855 embraces all "estates held for . . . charitable uses." Section 4 forbids the holding of a greater sum "by any other device;" and section 15 makes "all dispositions of property hereafter made to charitable . . . uses" subject to the act.

This question has not been raised before, due, it may be, to the fact that there could be no doubt but that the funds left for charitable purposes could be properly used for the charities in question. In the instant case, the situation is different, in that we have an obsolescent charity, and, what is worse, one that is not only amply, but so excessively, supplied, that orphanages for girls in the Philadelphia neighborhood have nearly 1000 vacancies.

The will in the instant case permits an accumulation of income; hence, if these acts do not apply, there is nothing to prevent this trustee from accumulating indefinitely.